UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                CASE NO.

**PAUL GREMILLION, SR.**                                **15-13063**
                                                                      **SECTION A**
DEBTOR                                                           CHAPTER 11


**PAUL GREMILLION, SR.**                                ADVERSARY NO.

PLAINTIFF                                                        **15-1080**

VERSUS

**HEALTHEDGE INVESTMENT FUND, L.P.,
CONCENTRIC EQUITY PARTNERS II, L.P.
HE-IOM AFFILIATES, LLC**

DEFENDANTS

## REASONS FOR DECISION

On November 24, 2015, Paul Gremillion, Sr. ("Debtor") filed a voluntary petition seeking bankruptcy relief under Chapter 11 of the United States Bankruptcy Code. HealthEdge Investment Fund, L.P., Concentric Equity Partners II, L.P. and He-Iom Affiliates, LLC (collectively, "HealthEdge") filed a Motion to Dismiss, charging that Debtor's filing was in bad faith.

On motion, 11 U.S.C. § 1112(b) authorizes a bankruptcy court to dismiss a bankruptcy petition for lack of good faith.[1] In determining whether a petition was filed in bad faith, courts use a totality of the circumstances test, with no single factor being conclusive of the issue.[2] "To dismiss a bankruptcy petition as a bad faith filing requires findings of 'both objective futility of the

---

[1] *See*, 11 U.S.C. § 1112(b) and *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068, 1071-73 (5th Cir. 1986).

[2] *In re Marino*, 2010 WL 519772, at *3 (Bankr. S.D. Tex. Feb. 9, 2010); *In re MBM Entertainment, LLC*, 531 B.R. 363, 408 (Bankr. S.D. N.Y. May 27, 2015).

reorganization process and subjective bad faith in filing the petition.'"[3] The movant bears the burden of proving that "the filing was frivolous because there was 'no reasonable probability' that the debtor would emerge from the bankruptcy proceeding because there is 'no realistic chance of reorganizing.'"[4]

HealthEdge argues that Debtor's filing was in bad faith because 1) the case represents a two-party dispute with few, if any, other creditors; 2) Debtor has engaged in forum shopping by filing this case; and 3) Debtor has materially misstated his income, assets, debts and financial affairs in an effort to hinder, delay or defraud HealthEdge.

## I. LAW AND ARGUMENT

### A. Two-Party Dispute/Forum Shopping

HealthEdge obtained a Judgment against Debtor, along with Derek Lancaster and Glen Gremillion, in the amount of $8,098,176.78 ("Judgment"). When HealthEdge sought enforcement of the Judgment by seizing over $3,000,000.00 in securities, Debtor filed for bankruptcy relief. HealthEdge claims that the bankruptcy petition represents a two-party dispute between Debtor and HealthEdge and a state court is capable of enforcing collection on the Judgment. As a result, HealthEdge asserts this filing is nothing more than a delaying tactic and in bad faith.

Debtor admitted in his § 341(a) meeting of creditors that the Judgment was his primary motivation for filing. Specifically, Debtor testified that his inability to pay the Judgment was his reason for seeking reorganization.[5] Health Edge argues that this testimony supports two (2)

---

[3] *MBM Entertainment, LLC*, 531 B.R. at 408 (quoting *In re General Growth Properties, Inc.*, 409 B.R. 43, 56 (Bankr. S.D. N.Y. Aug. 11, 2009)).

[4] *Id.* (quoting *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1309-10 (2nd Cir. 1997)).

[5] Pleading 39-2, exhibit A, p. 58, lines 2-8.

conclusions: 1) that this is a two-party dispute between Debtor and HealthEdge which the Court need not address and 2) that Debtor is forum shopping.

HealthEdge charges that Debtor's bankruptcy petition was filed to prevent HealthEdge from collecting on the Judgment. While the Court appreciates HealthEdge's frustration, this charge is hardly exceptional. Virtually every debtor files bankruptcy to prevent the immediate collection of debt. Bankruptcy's purpose is to impose a respite from the actions of creditors.[6] Without more, HealthEdge has merely stated the obvious. The United States Constitution provides a debtor with the opportunity to reorganize under the rules prescribed by Congress.[7] Thus, a debtor's effort to avail himself of the benefits of bankruptcy, without more, cannot be bad faith.

HealthEdge also argues that this bankruptcy case involves only two (2) parties. As such, the involvement of the bankruptcy court is unnecessary and improper. That a bankruptcy case may arise from a two-party dispute is one factor to consider under the "totality of circumstances" test. However, by itself it is generally insufficient to warrant dismissal.[8]

> Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities . . . . Several, but not all, of the following conditions usually exist.
>
> The debtor has one asset, such as a tract of . . . real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan

---

[6] *In re Hertzberg*, 521 B.R. 99, 106 (Bankr. W.D. Pa. Nov. 4, 2014) (purpose of bankruptcy's automatic stay is to provide the debtor with breathing room; to avoid "unilateral dismemberment" of the estate by creditors).

[7] *In re EES Lambert Associates*, 62 B.R. 328, 334 (Bankr. N.D Ill. Jun. 5, 1986) (recognizing a debtor's constitutional right to reorganize; the right to avail itself of the purposes of a business reorganization under Chapter 11 of the Bankruptcy Code).

[8] *In re Hyatt*, 479 B.R. 880, 892 (Bankr. D. N.M. Sept. 26, 2012) (fact that case was largely a two-party dispute is not a sufficient basis by itself for dismissing the case).

3

of reorganization or to make adequate protection payments . . . . [T]here are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure . . . [or] the debtor and one creditor . . . have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford . . . . There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies . . . bad faith cases.

Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, . . . no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." [9]

While HealthEdge argues that the Judgment is the only dispute with Debtor, this does not appear to be true. Although this case is in its very early stages, already it presents three (3) substantial issues. First, Debtor owes a $180,000.00 claim to his former lawyers.[10] That claim is disputed as Debtor is asserting that his former counsel committed malpractice in connection with the representation of Debtor in the suit resulting in the Judgment. Second, HealthEdge has aggressively pursued the collection of the Judgment. This has forced Debtor to expend considerable time and money in defense costs, money that could have been used to pay claims or increase his business income. In addition, HealthEdge's continued enforcement may well threaten Debtor's ability to work or generate funds to support himself. Only this forum has the ability to address Debtor's disputed claim against his counsel, provide for an orderly payment of HealthEdge, and reorganize Debtor's finances so that he can continue to earn an income as a contractor. These are legitimate reasons for seeking the restructuring of Debtor's obligations.

---

[9] *Little Creek*, 779 F.2d at 1072-1073; *In re Charfoos*, 979 F.2d 390, 393 (6th Cir. 1992).

[10] On "Schedule E/F: Creditors Who Have Unsecured Claims," Debtor represents that attorney, David Bronner, has a claim against him in the amount of $180,000.00. *See* Pleading 30, p. 13.

Finally, HealthEdge's own creditor, Gemino Healthcare Finance, LLC ("Gemino"), asserts an assignment of the Judgment and through it, the ability to negotiate or settle its satisfaction. Gemino has filed a Motion for Partial Summary Judgment seeking declaratory relief from this Court on the issue.[11] HealthEdge vehemently disputes this allegation, but the assertion has left Debtor without the ability to negotiate repayment terms. This impasse between Gemino and HealthEdge is yet another valid reason for bankruptcy relief.

Coupled with HealthEdge's allegations of a two-party dispute, is its further allegation that Debtor is merely forum shopping. A dismissal request based upon bad faith in filing has been deemed appropriate in a situation where the bankruptcy petition was filed "as a forum shopping device."[12] Pending in Florida state court is HealthEdge's Complaint seeking a judgment declaring that Gemino is not entitled to settle HealthEdge's Judgment against Debtor, Derek Lancaster and Glen Gremillion. While the Florida state court has jurisdiction over HealthEdge and Gemino, it is not clear that it has jurisdiction over Debtor. As previously stated, the state court also lacks the ability to structure repayment terms for the Judgment or address Debtor's claims against former counsel.

Nevertheless, a motion to dismiss a bankruptcy proceeding based on bad faith should focus not on the number of creditors or issues presented by a case, but on the Debtor's ability to reorganize.[13] Only by examining the potential for relief, can a court determine if the filing is hopeless and therefore an attempt to delay the inevitable. As the court in *MBM Entertainment*

---

[11] Pleading 39.

[12] *In re Argus Group 1700, Inc.*, 206 B.R. 737, 753 (Bankr. E.D. Pa. Oct. 31, 1996); *In re Walter*, 108 B.R. 244, 250 (Bankr. C.D. Cal. Nov. 22, 1989).

[13] *In re Marino*, 2010 WL 519772, at *3.

observed:

> [A] finding that a bankruptcy petition was filed with the intent to frustrate creditors may not be adequate to evidence the "absence of intent to seek rehabilitation" because affording a debtor "breathing room" from creditors is a major goal of the bankruptcy laws, and it is expected that creditors will be delayed and "frustrated" when the debtor files a petition.[14]

Debtor holds substantial assets that were seized by HealthEdge prior to his filing. Those assets remain frozen and available to pay creditor claims. The two (2) other Judgment debtors have also indicated a willingness to contribute substantial sums towards the satisfaction of the Judgment. While the exact amount they propose to contribute is unknown, it is believed that a large balance will remain.

Debtor is a contractor by profession with a moderately successful business. Whether or not his income has been affected by the litigation involving HealthEdge is unknown. Based on Debtor's prepetition history with HealthEdge, the Court may assume that the substantial time and money Debtor has spent to date, could not have been helpful to his business.

Debtor does not appear to have the necessary liquidity to pay off the Judgment and his other debts immediately. However, Debtor does enjoy substantial income which might be sufficient to pay off debt over time. Further, it is possible that the Judgment may be compromised for a sum Debtor can readily pay. In fact, Gemino has allegedly negotiated a settlement for repayment of the Judgment which appears feasible.

The movant has the burden of proving that the Debtor does not have a realistic chance of reorganizing.[15] Because at this juncture the Court cannot state that Debtor lacks any realistic ability

---

[14] *MBM Entertainment, LLC*, 531 B.R. at 408 (quoting *In re Cohoes Industrial Terminal, Inc.*, 931 F.2d 222, 228 (2nd Cir. 1991)).

[15] *MBM Entertainment*, 531 B.R. at 408.

to reorganize, HealthEdge has failed to carry its burden of proof on the issue. For the above reasons, the Court also finds that Debtor's bankruptcy filing does not represent a mere forum shopping device warranting dismissal.

### B. Do Debtor's Misrepresentations or Omissions Constitute Bad Faith?

While factual misrepresentations and omissions on bankruptcy schedules are indicative of a lack of good faith,[16] in and of themselves they are generally insufficient to justify a dismissal of the petition.[17] Indeed, such misrepresentations do nothing for purposes of fulfilling a movant's burden of showing futility in terms of a debtor's ability to reorganize. Perhaps for this reason a debtor's misrepresentations in filings generally arise in connection with a motion to deny discharge rather than a motion to dismiss a petition for lack of good faith.[18]

HealthEdge alleges that several omissions in Debtor's schedules constitute a blatant attempt to hide assets. Specifically, HealthEdge asserts:

### 1. Failure to Disclose Existence of a Collateral Mortgage

Debtor's schedules do not reflect the existence of a security interest encumbering Debtor's home. Debtor testified at his § 341 meeting of creditors that no mortgage existed on his home. Nevertheless, a search of the mortgage records revealed the recordation of a collateral mortgage, dated September 18, 2015, in the amount of $500,000.00. The holder of the mortgage is Jaime

---

[16] *In re Mickler*, 324 B.R. 613, 618 (Bankr. W.D. Ky. Apr. 25. 2005).

[17] *See In re Charfoos*, 979 F.2d at 394-395 (factual misrepresentations and omissions on financial statements and bankruptcy pleadings coupled with violations of state court orders and maintenance of an extravagant lifestyle, deemed sufficient to constitute bad faith); *In re Mickler*, 324 B.R. at 618 (dismissal based not only on misrepresentations on schedules and statement of financial affairs, but also on debtor's failure to file monthly operating reports and failure to comply with the requirements of a debtor in possession).

[18] *See generally, In re Pratt*, 411 F.3d 561 (5th Cir. 2005) (creditor objected to discharge on grounds that debtor made false statements in his schedules and statement of financial affairs and that he concealed assets); *In re Sholdra*, 249 F.3d 380 (5th Cir. 2001) (discharge denied based upon debtor's false oaths)

Graham, a paralegal in the law office of John Anderson, Debtor's attorney.

Under Louisiana law a mortgage is a mere accessory obligation which cannot exist separate and apart from the debt it secures.[19] The collateral mortgage note creates a fictional debt owed by its maker to the holder or bearer of the note. The collateral mortgage note is in turn secured by the collateral mortgage. When the maker borrows or incurs an actual obligation, he pledges the collateral mortgage note to secure its performance. This allows the borrower to execute multiple obligations with differing terms, amounts and execution dates without rewriting the collateral mortgage. Because the collateral mortgage secures a specific note, the collateral note, it is valid. The actual security for the later incurred debt is the pledge of the collateral note.

In response to HeathEdge's allegations, John Anderson explained that the collateral mortgage was executed by Debtor as a mechanism for securing future financing. However, Debtor did not acquire financing and he never pledged the collateral mortgage note to secure any debt. As a result, the mortgage, though of record, secures nothing. HealthEdge complains that Debtor's failure to disclose the existence of this mortgage is a material omission designed to defraud his creditors.[20]

The existence of a collateral mortgage on the public records places third parties on notice of the potential existence of debt. However, because the collateral mortgage note is a fiction that requires its pledge for another actual obligation, the existence of a collateral mortgage does not indicate what, if any, debt it secures. In this case the mortgage secures no debt. If the Debtor had

---

[19] *Texas Bank of Beaumont v. Bozorg*, 457 So.2d 667, 671 (La. 1984) (the recordation of a mortgage to secure optional loans which may be made in the future has no effect against third parties).

[20] At the Court's request, Anderson promptly cancelled the collateral mortgage from the public records. Pleading 63, exhibit A.

scheduled it as a security interest against his home, he would have misled his creditors into believing a debt existed. Exactly the type of subterfuge he must avoid.

Because Debtor has no obligation secured by the pledge of the mortgage note, he correctly indicated that his home was free and clear of encumbrances. Debtor's schedules do not mislead and his omission cannot be grounds for dismissal.

### 2. Failure to Disclose Interest in LLC and Limited Partnership

Debtor's schedules disclose interests in two (2) limited liability companies, P. Gremillion, LLC and RSC TX Sleep Centers. HealthEdge complains that on September 4, 2015, Debtor formed a third LLC, Paul Gremillion & Andrea F. Gremillion, L.L.C. which was not disclosed. Debtor also failed to reveal that he holds a limited partnership interest in HealthEdge Investment Fund, L.P.

Debtor's counsel accepted blame for Debtor's failure to disclose Paul Gremillion & Andrea F. Gremillion, L.L.C. Although formed relatively recently, it never conducted operations, owned any assets or incurred any debt. Debtor's failure to list his limited partnership interest was not sufficiently explained.

The failure to disclose assets is an omission the Court does not take lightly. It is the responsibility of every Debtor to fully disclose all assets, especially those that might lead to the discovery of additional value for the estate.[21] It is not the obligation of the creditors, trustee or court to ferret out assets.[22] For this reason, even the omission of an asset with no value is a serious concern.

---

[21] *In re Petersen*, 323 B.R. 512, 517 (Bankr. N.D. Fla. Apr. 26, 2005) (debtors must make full and complete disclosures on their bankruptcy schedules).

[22] *In re Fedczak*, 2007 WL 1670110 at *5 (Bankr. N.D. W.V. Jun. 6, 2007) (it is not up to the trustee and other parties in interest to ferret out the truth about a debtor's assets and financial affairs).

### 3. Misrepresentations on Schedule A/B

On Schedule A/B, Debtor placed a cumulative value on household items at $1600.00, a clothing value of $500.00, and represented that he had no watercraft.[23] Later, Debtor amended Schedule A/B, adjusting the value of his household items to $2200.00, and clothing to $1500.00. He also added a twenty-foot (20 ft.) watercraft with a value of $7500.00.[24]

Under Louisiana law, clothing is generally exempt from the claims of creditors without limitation based on value. Similarly, most household items are also exempt as are firearms, again without reference to value. As a result, Debtor's adjustment in value has no effect on his estate. What does affect Debtor's estate is his failure to disclose a boat with a value of $7500.00.

### 4. Misrepresentations on Schedule E/F and Schedule H

On Schedule E/F, Debtor represented that he had a disputed claim for legal fees which was not subject to offset. Nevertheless, in his original Summary of Assets and Liabilities, Debtor listed a potential malpractice claim against his attorney.[25] Although HealthEdge asserts that the failure to list this debt as subject to offset is misleading, the Court disagrees. The claim is for legal fees incurred in connection with Debtor's defense of HealthEdge's claims. Debtor has listed it as disputed, indicating defenses to its payment. He has also listed the potential claim for malpractice on his schedules. The existence of defenses to payment does not constitute an offsetting claim. An offsetting claim is a separate cause of action against a party that holds a claim against the debtor. Debtor's defenses to payment are not separate causes of action in the traditional sense of offset.

---

[23] Pleading 30, pp. 4-5.

[24] Pleading 50, pp. 4-5.

[25] Pleading 30, p. 7.

They arise out of the same contract which is still unliquidated.[26] As such, the Court does not find that Debtor's failure to characterize his malpractice claim as an offsetting claim is misleading or material given his other disclosures.

On Schedule H, Debtor represented that he did not live in a community property state, but on Schedule A/B clearly represented that his residence was located in Louisiana, a community property state.

### 5. Misrepresentation on Schedule I

On Schedule I, Debtor estimated his monthly income to be $5000.00 per month.[27] Later, Debtor amended his response, estimating that based upon a newly-executed building contract, his monthly income over the next year would be $10,000.00.[28] Because the adjustment in his income was based on a new business development, namely, his award of a building contract, his initial underestimate cannot be attributed to bad faith on Debtor's part.

### 6. Misrepresentations on Statement of Financial Affairs for Individuals Filing for Bankruptcy ("SOFA")

Debtor represented on the SOFA that within two (2) years of filing for bankruptcy he had not given any gifts valued at more than $600.00 to any charity.[29] However, on Schedule J Debtor valued his charitable and religious donations at $1000.00 per month. While this placed creditors on notice of Debtor's charitable giving, it did nothing to disclose the extent of his prepetition donations.

---

[26] Pleading 39-2, exhibit A, p. 58, lines 23-24; p. 59, lines 1-2.

[27] Pleading 30, p. 20.

[28] Pleading 62, p. 1.

[29] Pleading 30, p. 29.

11

On his SOFA, Debtor initially represented that he had no income from employment or from a business during the two years preceding his filing.[30] Later, Debtor amended his response, providing that from January 1, 2015 to the time of his bankruptcy filing he earned $50,000.00 from operating a business.[31]

In his SOFA, Debtor represented that within two (2) years of filing for bankruptcy he did not make any transfers out of the ordinary course of business.[32] Nevertheless, at his § 341 meeting of creditors, Debtor testified that he deposited approximately $100,000.00 into Paul Gremillion, LLC (his construction business) within six (6) months preceding his filing.[33] Further, approximately five (5) to six (6) weeks before filing bankruptcy, Debtor loaned approximately $100,000.00 to RSC Diagnostics.[34] Neither transaction was disclosed.

## II. CONCLUSION

The totality of the omissions outlined above is both serious and troubling. While some have been adequately explained, most have not been sufficiently addressed. Many are material to Debtor's financial standing and ability to repay. For example, Debtor's failure to initially disclose income received from his business and failure to disclose substantial transfers of funds shortly before filing for bankruptcy relief, are extremely serious lapses. However, such omissions provide little insight with respect to Debtor's ability to reorganize. Instead, they more appropriately reflect

---

[30] Pleading 30, p. 25.

[31] Pleading 50, p. 13.

[32] Pleading 30, p. 29.

[33] Pleading 39-2, Exhibit A, p. 70, lines 18-22.

[34] Pleading 39-2, Exhibit A, p. 68, lines 17-25; p. 69, lines 1-8.

on Debtor's ability to secure a discharge. Consideration of that issue is not yet before the Court.

For the above reasons, HealthEdge's Motion to Dismiss Case (pleading 39) is **DENIED**.

An Order in accord with these Reasons will be rendered.

New Orleans, Louisiana, March 3, 2016.

                                              Hon. Elizabeth W. Magner
                                              U.S. Bankruptcy Judge