UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                       CASE NO.

**PAUL GREMILLION, SR.**                          **15-13063**
                                                                       SECTION A
DEBTOR                                                               CHAPTER 11

**ORDER AND REASONS**

This matter is before the Court pursuant to Debtor's Motion for Order Approving Settlement Agreement and Compromise with Gemino Healthcare Finance, LLC ("Gemino").[1]

**I. FACTS**

In August 2008, HealthEdge Investment Fund, L.P., Concentric Equity Partners II, L.P. and He-Iom Affiliates, LLC (collectively, "HealthEdge") entered into a Purchase Agreement with Paul Gremillion, Sr., Derek Lancaster and Glen Gremillion (collectively "Founders") for HealthEdge's purchase of fifty-one percent (51%) of Founders' ownership interests in Intra-Operative Monitoring Services, LLC ("IOM").

In September 2008, Gemino, on one side, and IOM and certain of its affiliated entities, on the other (collectively "Borrower"), entered into a Credit Agreement. Under its terms, Gemino agreed to loan certain sums to Borrower ("Obligations") payable on or before August 31, 2013 ("Maturity Date"). HealthEdge guaranteed repayment of the Obligations through a Collateral Assignment pledging HealthEdge's rights under the Purchase Agreement in favor of Gemino.

Prior to the Maturity Date, a dispute arose between HealthEdge and Founders with each alleging breach of the Purchase Agreement by the other. Upon learning of HealthEdge's claims against Founders, Gemino notified both HealthEdge and Founders that any and all payments due to

---

[1] Main case pleading ("PL") 15. Unless noted, all pleadings are contained on the docket of the main bankruptcy case.

HealthEdge in connection with the Purchase Agreement were to be paid to Gemino until the Obligations were paid in full.[2] On May 12, 2014, Gemino filed a Complaint for Declaratory Judgment and Other Relief ("Pennsylvania Complaint") against Founders in the United States District Court for the Eastern District of Pennsylvania ("Pennsylvania Court"), seeking damages in excess of $3 million.[3]

The claims by Founders against HealthEdge and HealthEdge's counter-claims against Founders arising from the Purchase Agreement went to arbitration. On March 26, 2015, while Gemino's action against Founders was still pending, HealthEdge prevailed in arbitration and obtained an award against Founders in the amount of $8,098,176.78 ("Judgment").[4]

In an effort to collect on the Judgment, HealthEdge filed an "*Ex Parte* Petition for Enforcement of Foreign Judgment" ("State Suit") in the Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana ("State Court"), against Founders Paul Gremillion and Derek Lancaster, both residents of St. Tammany Parish.[5] Prior to the filing of the enforcement action, Founders sought to broker a settlement agreement pursuant to which the Judgment would be satisfied.

---

[2] PL39-4, p. 3.

[3] *Gemino Healthcare Finance, LLC v. Paul Gremillion, et al*, Civil Action Number 14-2737 (E.D. Pa.).

[4] Pursuant to HealthEdge's Petition To Confirm The Arbitration Award, judgment was entered in favor of HealthEdge and against Founders, jointly and severally, in the Superior Court of Fulton County, Georgia.

[5] *HealthEdge Investment Fund, L.P., et al v. Paul Gremillion and Derek Lancaster*, Civil Action Number 2015-13532 (22nd JDC).

On August 28, 2015, Founders transmitted to Gemino verified financial statements to assist in reaching a mutually agreeable settlement figure.[6] On September 12, 2015, Paul Gremillion's counsel, John Anderson ("Anderson") sent an email to Gemino's counsel, Michael Mulcahy ("Mulcahy") apprising him of HealthEdge's effort to enforce the Judgment and the need, in light of HealthEdge's effort, to effect a settlement satisfying the Judgment.[7] Mulcahy informed in a September 16, 2015 email: "[S]poke with Tom [Schneider, CEO of Gemino] late yesterday. Gemino will settle the outstanding $8.1 MM judgment in exchange for a lump sum payment of $5,500,000.00. I am preparing an amended pleading in the pending PA [Pennsylvania Court] action in which I will add a claim for declaratory relief against the HealthEdge entities." The following day, in a September 17, 2015 email, Mulcahy informed Anderson: "I am preparing our amended complaint to add a declaratory judgment action, but Gemino needs written confirmation from you and Pat Reso [counsel for Derek Lancaster] that Paul, Glen and Derek [Founders] agree to a $5.5 million settlement amount and that the entire settlement amount will be payable by a date certain."[8]

On September 20, 2015, Anderson informed Mulcahy in an email that a settlement in the amount of $5.5 million could be funded if Gemino could get HealthEdge to agree to it.[9] On that same date, Mulcahy sent an email to Anderson and Patrick Reso ("Reso") providing:

> I need a written letter signed by Paul, Glen and Derek, memorializing their settlement offer in the amount of $5.5 million payable in a lump sum within 45 days from the execution of a mutually agreeable settlement agreement. I will attach the letter to my amended

---

[6] PL 120-2, pp. 2-7.

[7] May 6, 2016 hearing, Exh. 33. Unless noted, all exhibits are filed in the record of the hearing on this Motion.

[8] Exh. 7.

[9] PL 120-2, p. 10

3

complaint seeking a declaratory judgment against [HealthEdge] that Gemino is authorized to settle the judgment.[10]

The following day each of the Founders executed a settlement offer which provided:

> The undersigned individuals who are defendants and judgment debtors to HealthEdge Investment Fund and two other affiliated entities (hereinafter cumulatively referred to as "HealthEdge"), through a judgment recently rendered in a lawsuit in Atlanta (which confirmed a prior arbitration award) in the approximate sum of $8.1 MM, do hereby agree to settle this judgment and arbitration award for the sum of $5.5 MM with Gemino and agree to fund and contribute jointly to produce and pay to Gemino, the total sum of $5.5 MM within forty-five (45) days of Gemino accepting, in writing, this settlement offer in the amount of $5.5 MM and either
> (1) Gemino gaining the acceptance of HealthEdge (who are shown as the plaintiffs and the creditors holding the judgment referred to above) to the settlement of $5.5MM so that both Gemino and HealthEdge execute a full and final settlement agreement, accepting the $5.5 MM in full settlement and satisfaction of (a) all pending litigation (and any potential future litigation) and (b) the judgment referenced above, or (2)(a) Gemino immediately naming HealthEdge as parties to the lawsuit presently pending (and any potential future) litigation in federal court in Philadelphia between Gemino and the three undersigned individuals, (b) Gemino gaining an interim order from the federal judge in the Philadelphia lawsuit temporarily staying or enjoining HealthEdge from taking any further steps to seize the assets of the three individuals named below (because such seizure actions will probably prejudicially impair the ability of the three individuals to fund the settlement of $5.5 MM upon its approval by the federal judge in Philadelphia), (c) Gemino gaining a judgment/order from the federal judge in the Philadelphia lawsuit declaring that Gemino has the unfettered right to settle the arbitration award and corresponding judgment referred to above in the amount of $8.1 MM for the sum of $5.5 MM to be funded by the undersigned individuals, (d) Gemino gaining simultaneously a judgment/order from the federal judgment in the Philadelphia lawsuit approving settlement of the above judgment in the amount of $8.1 MM for the payment of $5.5 MM, and (e) Gemino gaining simultaneously a judgment/order from the federal judgment in the Philadelphia lawsuit permanently enjoining HealthEdge from taking any further steps in the future to collect or enforce the aforesaid judgment/order (or bringing any future litigation) because the judgment/order of the federal court in Philadelphia is/are binding and *res judicata* on all of the rights held by all partes, including both Gemino and HealthEdge, because the settlement and payment of $5.5 MM will end all litigation between Gemino and HealthEdge on one hand, and the three undersigned individuals on the other hand - thus, the payment of $5.5 MM will end all litigation that is presently pending or might be subsequently brought by any of these parties against each other.[11]

---

[10] Exh. 17.

[11] Exh. 1. The signed settlement agreements were transmitted to Mulcahy pursuant to a September 22, 2015 email from Jamie Graham, Anderson's paralegal. Exh. 16.

4

On the day the settlement offers were signed by Founders, Gemino filed with the Pennsylvania Court, a First Amended Complaint for Declaratory Judgment and Other Relief. In its Amended Complaint, Gemino attested:

> 39. On September 20, 2015, Founders offered to pay Gemino and Purchasers [HealthEdge] $5,500,000.00 in full satisfaction of the Judgment.
>
> 40. Gemino has elected to accept Founders [sic] $5.5 million settlement offer (the "Proposed Settlement"). The proposed settlement payment will be divided as follows: (i) approximately $3.5 million to Gemino to payoff the outstanding balance owed under the Credit Agreement; and (ii) approximately $2.0 million to Purchasers' attorney to payoff amounts Purchasers' [sic] owe their attorneys.[12]

The following day, Jennifer Maleski ("Maleski"), Founders' Pennsylvania counsel, transmitted to Anderson a copy of Gemino's First Amended Complaint and Maleski's draft of a Motion to Dismiss. Anderson sent an email to Maleski advising her to "suspend work because I may have settled the case."[13]

On September 24, 2015, Anderson sent an email to Mulcahy seeking to "clarify and supplement the allegations of the Amended Complaint . . . ." To accomplish this, Anderson suggested that Mulcahy have an authorized official with Gemino accept the Founders' settlement offer by writing at the bottom of the settlement offer "the words 'So Agreed'; and put /s/ Duly Authorized Gemino Officer."[14]

On October 6, 2015, Maleski sent Anderson a second email asking if the matter had settled. Anderson responded affirmatively, informing: "We settled with Gemino for $5.5 MM."[15]

---

[12] Exh. 2.

[13] Exh. 8.

[14] Exh. 18.

[15] Exh. 8.

Believing that a settlement had been reached, Anderson sought to prevent HealthEdge from enforcing the Judgment, filing with the State Court a Motion for Preliminary Injunction ("Injunction Motion"). In connection with that effort, Mulcahy, on October 19, 2015, submitted an affidavit ("Affidavit") attesting, in pertinent part:

> 2. I am aware that Plaintiffs [HealthEdge] and Founders [Paul Gremillion, Glen Gremillion and Derek Lancaster] were parties to an arbitration in which Plaintiffs asserted claims against Founders related to a purchase agreement (the "Purchase Agreement") between Plaintiffs and Founders. An arbitration award and judgment was ultimately entered in favor of Plaintiffs and against Founders in the amount of approximately $8.1 million (the "Judgment").
>
> 3. Founders and Gemino have agreed upon the material terms of a settlement of the dispute. The Founders have agreed to pay to Gemino a lump sum amount of $5.5 million in full satisfaction of the Judgment.[16]

On October 8, 2015, prior to the submission of Mulcahy's Affidavit, HealthEdge filed in Florida state court a Complaint for Declaratory Judgment against Gemino seeking a declaration that Gemino did not have the authority to settle the Judgment for $5.5 million.[17] Less than a month later, on November 3, 2015, the State Court denied Founders' Injunctive Motion finding, in part:

> [D]efendants assert they are entitled to injunctive relief because there has been a settlement of the matter between Gemino and defendants. However, there has been no evidence presented to this Court that there is a written compromise between Gemino and the defendants. What is before the Court is an action to enforce a foreign judgment, and there has been no showing made by defendants under the [Louisiana Enforcement of Foreign Judgments] Act that enforcement of the judgment at issue should be stayed.[18]

Following the State Court's ruling and the Florida state court filing, settlement negotiations continued, but the amount of the proposed settlement changed. On November 11, 2015, Anderson

---

[16] Exh. 4.

[17] Exh. 9.

[18] Exh. 10.

6

sent an email to Mulcahy requesting Gemino's "proposed written settlement agreement."[19] On November 19, 2015, Mulcahy complied, sending a "draft settlement agreement between the Founders and Gemino" and advising: "The agreement remains subject to further modification and has not yet been approved by Gemino. I left the settlement amount blank for now. I understand that Tom S[chneider] and Paul [Gremillion] have had a few conversations regarding a settlement amount above $5.5MM."[20]

On November 24, 2015, Paul Gremillion ("Debtor") filed a Voluntary Petition for Relief under Title 11, Chapter 11 of the United States Bankruptcy Code.[21] On November 30, 2015, Debtor filed the instant Motion for Order Approving Settlement Agreement and Compromise with Gemino Healthcare Finance, LLC.[22] On that same date, Debtor filed an adversary proceeding against HealthEdge seeking, in part, a declaration that Gemino, not HealthEdge, had the right to settle the Judgment with Founders ("Adversary Proceeding").[23] Shortly thereafter, Gemino, without objection, intervened in the matter.[24]

Following the above filings, the tenor of the settlement negotiations changed. On December 21, 2015, Mulcahy advised Anderson that he would be sending "a proposed global settlement agreement . . . which would include HealthEdge." In response to Anderson's inquiry as to whether

---

[19] Exh. 21.

[20] Exh. 22.

[21] PL 1.

[22] PL15.

[23] *Paul Gremillion, Sr. v. HealthEdge Investment Fund, L.P., et al*, Civil Action Number 15-1080 (Bankr. E.D. La.).

[24] Adversary proceeding no. 15-1080, PL 14, 28.

7

HealthEdge was "going to acquiesce in the 5.5 m settlement," Mulcahy stated:

> Please be advised that there is no settlement agreement at $5.5 MM. Although Gemino at one time would have agreed to accept $5.5 MM to settle the case, that time has long since passed. Founders never paid Gemino the proposed $5.5 MM, nor did they provide Gemino with any assurance when any such settlement amount would be paid. As you know, Tom and I recently persuaded HealthEdge to join in a global settlement for a total payment of $6.4 MM. This correspondence shall confirm that Gemino's only settlement offer is the $6.4 MM offer, which includes, Gemino, all three Founders and all three HealthEdge entities.[25]

Efforts to broker a "global settlement" continued with Mulcahy, on January 7, 2016, sending the following email to Anderson and Barry Miller ("Miller"), counsel for Glen Gremillion:

> This email shall memorialize our January 5, 2015 settlement discussions. In response to the global settlement proposal from Gemino and HealthEdge of $6.4 million, the Founders offered $6.0 million, plus 50% of the net recovery from Founders' claims against their prior attorneys . . . . To be clear, the Founders' global settlement offer does not include any rights to Founders' claims against their accountants.
>
> I spoke with HealthEdge's counsel late yesterday. In response to the Founders' global settlement offer set forth above, HealthEdge will agree to participate in a global settlement in exchange for payment of $6.2 million, plus 50% of the net proceeds of Founders' claims against its prior attorneys **and** accountants.[26]

In response, Anderson advised that the $6.0 million offer was a "last gasp" and was not intended "AS A SEGUE INTO A NEW SETTLEMENT PROPOSAL FOR A HIGHER SUM . . . ." Anderson further explained that the higher settlement amount "was to be paid solely to HealthEdge to gain their acquiescence in the $5.5 MM settlement already in place between our respective clients since September [of 2015]."[27]

---

[25] Exh. 23.

[26] Exh. 12 (emphasis original).

[27] Exh. 13 (emphasis original).

The next settlement discussions made no reference to a global settlement. Instead, Mulcahy reiterated that there was no $5.5 million settlement agreement between Founders and Gemino and suggested that the $5.8 million settlement reached between Gemino CEO Tom Schneider and Paul Gremillion be memorialized in a "fully executed settlement agreement." In response, Anderson, without acquiescing to Mulcahy's contention that no $5.5 million settlement had been reached between Founders and Gemino, agreed that a written settlement agreement for $5.8 million should be prepared as soon as possible.[28]

On January 24, 2016, Mulcahy transmitted a draft settlement agreement providing, in pertinent part, that Founders would pay Gemino $5.8 million in full settlement of the Judgment and that Founders would indemnify Gemino against any claim lodged by HealthEdge against Gemino related to the settlement agreement.[29] The draft agreement was not acceptable to Debtor. In a January 28, 2016 email, Anderson advised that his client was "not going to increase the present offer" and that his client "isn't willing to give an indemnity to your client."[30]

While settlement negotiations had seemingly stalled, Debtor's main bankruptcy case and adversary proceeding moved forward. Before the Court could adjudicate Debtor's Motion as to whether a settlement agreement had been reached between Founders and Gemino, a determination was required as to which party, HealthEdge or Gemino, had the authority to enter into such a settlement agreement. Accordingly, on January 29, 2016, Gemino filed a Motion for Partial

---

[28] Exh. 15.

[29] Exh. 28.

[30] Exh. 29.

Summary Judgment to resolve the issue.[31] On February 15, 2016, HealthEdge filed a Memorandum in Opposition to Gemino's Motion for Partial Summary Judgment.[32] Oral argument was conducted on February 19, 2016, following which additional briefing was ordered. Following the submission of the last brief on March 31, 2016, the matter was taken under advisement.[33] On April 19, 2016, the Court granted Gemino's Motion for Partial Summary Judgment.[34]

Having determined that Gemino was empowered to settle the Judgment, the issue of whether Gemino and Founders had entered into a settlement agreement was ripe for adjudication. Accordingly, the Court set the matter for hearing on May 6, 2016.[35] Following oral argument, the testimony of witnesses, and the submission of evidence, the parties requested additional time to prepare post hearing briefs. On June 10, 2016, the briefs were filed and the matter was taken under advisement.

## II. LAW AND ANALYSIS

Louisiana Civil Code Article 3072 provides that "[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings." The requirement that the agreement be in writing does not necessarily mean that the agreement must be contained in one document.[36] Where two or more

---

[31] Adversary proceeding no. 15-1080, PL 39.

[32] Adversary proceeding no. 15-1080, PL41.

[33] Adversary proceeding no. 15-1080, PL 47.

[34] Adversary proceeding no. 15-1080, PL 59, 60.

[35] PL 109.

[36] *Felder v. Georgia Pacific Corp.*, 405 So.2d 521, 523 (La. 1981).

instruments, read together, outline each party's obligations to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected.[37] Emails between the parties can constitute such writings,[38] but again, each side must acquiesce to the pertinent terms of the agreement.[39]

Based upon the emails transmitted between Mulcahy, Anderson and Reso, there was no acquiescence on the part of Gemino to the Founders' $5.5 million settlement proposal. On September 16, 2015, Mulcahy represented that Gemino would settle the Judgment for a payment of $5.5 million. On September 17, 2015, Mulcahy emailed Anderson that Gemino needed written confirmation that Founders agreed to the proposed $5.5 million settlement payable on a date certain. On September 20, 2015, Mulcahy emailed Anderson and Reso that he needed a written letter signed by Founders memorializing the $5.5 million settlement to be paid "within 45 days from the execution of a mutually agreeable settlement agreement."

On September 21, 2015, Founders executed a settlement offer providing that they would pay Gemino $5.5 million conditioned on the occurrence of 1) Gemino obtaining HealthEdge's acquiescence or 2) a court order recognizing Gemino's right to settle the Judgment and precluding HealthEdge from pursuing Founders after the closing of the settlement.

---

[37] *Id.* at 524; *see, also Klebanoff v. Haberle*, 978 So.2d 598, 601-02 (La. App. 2nd Cir. 2008); *Dozier v. Rhodus*, 17 So.3d 402, 409 (La. App. 1st Cir. 2009).

[38] *See, e.g. Dozier*, 17 So.3d at 409; *Klebanoff*, 978 So.2d at 602; *Geer v. BP America Production Co.*, 150 So.3d 621, 625 (La. App. 3rd Cir. 2014).

[39] *See Amy v. Schlumberger Technology Corp.*, 771 So.2d 669 (La. App. 3rd Cir. 2000) (despite agreement on settlement figure, no compromise reached in absence of signed settlement agreement); *Stelly v. Stelly*, 2015 WL 82355 (La. 3rd Cir. 2015 (no compromise in absence of signed agreement entailing all the pertinent settlement terms); *Anthony v. Liberty Mut. Ins. Co.*, 759 So.2d 910 (La. App. 3rd Cir. 2000) (no compromise where party did not sign settlement agreement due to inclusion of provisions not set forth in written correspondence).

Because HealthEdge was vehemently objecting to settlement, Founders were understandably concerned about Gemino's ability to settle the Judgment without HealthEdge's consent. While Gemino asserted it had the sole right to compromise, HealthEdge clearly did not agree.[40] Gemino's position derived from its security interest in the Judgment. As a consequence, it asserted its unfettered right to enforce or compromise the Judgment as its collateral. While Gemino might have been unwavering in its belief that it had the necessary authority to compromise the Judgment, a settlement with Gemino was not without risk. Justifiably, Founders also wanted protection from HealthEdge's continued pursuit.

The conditions attached to the Founders' agreement were formulated by Mulcahy and Anderson in a call discussing settlement.[41] In that call, Mulcahy explored possible mechanisms for effectuating the settlement each party contemplated. Barring consent by HealthEdge, Mulcahy proposed the filing of a request for declaratory relief in the already pending action against Founders in Pennsylvania. The request would ask the Court to find that Gemino could compromise the Judgment, confirm the proposed terms as reasonable and bar Health Edge from pursuing enforcement of the Judgment post compromise.[42]

Founders' offer contemplated the successful execution of this litigation strategy. Although it was couched as an offer to settle within forty-five days of acceptance, the conditions attached to payment meant that the settlement proposed by Founders was not "payable within forty-five days" or "a date certain."

---

[40] Hearing Transcript p. 15, lines 24-25; p. 16, line 1

[41] Hearing Transcript p. 15.

[42] Hearing Transcript p. 16, lines 3-19.

Following Founders' offer, Gemino began acting on its proposed strategy to effect a settlement. On September 21, 2015, it filed with the Pennsylvania Court, a First Amended Complaint for Declaratory Judgment and Other Relief attesting that Founders, on September 20, 2015, had offered to pay $5.5 million to satisfy the Judgment and that Gemino had elected to accept the offer. For reasons that are not entirely clear, that request was not addressed and HealthEdge continued to enforce the Judgment by filing the Louisiana Suit requesting that the Judgment be made executory.[43]

On September 24, 2015, Anderson sought to complete settlement negotiations, urging Gemino to accept the settlement offer by having an authorized official with Gemino sign the offer with the notation "So Agreed." Gemino never did. This is further evidence that both Founders and Gemino did not consider Founders' written agreement binding.

Seeking to prevent HealthEdge from enforcing the Judgment, Founders filed the Injunctive Motion in the State Court. Founders alleged that due to its agreement to compromise with Gemino, HealthEdge should be enjoined from enforcing the Judgment. After filing the Injunctive Motion, Anderson urged Gemino to intervene in the State Action believing it necessary to convince the State Court to order injunctive relief.[44] This evidences Anderson's belief that there was insufficient written documentation to support a binding compromise.

Although Founders argue that the filing of the Pennsylvania Complaint and Injunctive Motion evidences Gemino's commitment to settle, the Court finds that Gemino was merely

---

[43] There was an indication at the hearing that HealthEdge successfully challenged the diversity jurisdiction of the Pennsylvania Court thwarting Gemino's ability to obtain a trial on the merits of its Amended Complaint. Hearing Transcript p. 76, lines 6-14.

[44] Hearing Transcript p. 27, lines 12-13.

pursuing its previously designed litigation strategy in an effort to put itself *in the position of settling with Founders*. With or without an enforceable agreement, Gemino needed to obtain HealthEdge's consent or have a court, any court, confirm that it had the right to compromise the Judgment. Without such a ruling, practically speaking, Gemino could not effect a settlement.

The question of whether or not an enforceable settlement exists turns on an interpretation of the emails passing between the parties. The Court finds that from the inception of these communications, the parties appear to have settled on an amount ($5.5 million) but Gemino also insisted that the amount be payable on a date certain and that a mutually agreeable settlement document be signed. In response, Anderson prepared an agreement that was signed by the Founders. However, the agreement did not commit to pay the $5,500,000.00 settlement on a date certain. Instead, it incorporated a litigation strategy suggested by Mulcahy and accepted by Anderson. While Gemino took the first step to effectuate this strategy, it made no other attempts to complete the conditions. Tellingly, Anderson specifically urged Gemino to formally accept the September 21, 2015 letter agreement but Gemino did not.

In *Anthony v. Liberty Mut. Ins. Co.*, 759 So.2d 910, 912-13 (La. App. 3rd Cir. 2000), counsel for the litigants exchanged letters acknowledging that the parties had agreed to settle the matter for $3,000.00 plus the payment of court costs. Following his affirmation of the settlement amount, defense counsel provided: "I have requested the settlement check and will begin preparation of the **necessary settlement documents** and will forward same to you for execution and transmittal."[45] Plaintiff, however, refused to execute the forwarded settlement documents, complaining that the written agreement encompassed more than that to which the parties had agreed.

---

[45] *Id.* (emphasis provided).

14

In determining that an enforceable compromise did not exist, the Louisiana Appellate Court recognized that "[a] compromise is governed by the same general rules of construction applicable to contracts."[46] With that in mind, the Court pointed to the provisions of Louisiana Civil Code Article 1947 which states: "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form."[47] As defense counsel, in his settlement letter, contemplated that the "necessary settlement documents" would be executed, the Court concluded: "[T]he parties never intended to be bound by the exchange of letters as the embodiment of their contract. The compromise was not complete until the parties signed the formal documentation . . . . A compromise never came into existence."[48]

Therefore, although Mulcahy and Anderson agreed to the settlement price and a litigation strategy to achieve settlement, it is clear that Gemino always conditioned its consent on two factors: (1) a written agreement acceptable to all and (2) payment on a date certain. Anderson's September 21, 2015 settlement letter did not meet these conditions and therefore the agreement was not accepted by Gemino.

In the alternative, Debtor argues that even if an enforceable settlement agreement did not exist, Gemino should be bound to compromise the matter because Debtor relied on Gemino's promise of a settlement to its detriment. To establish detrimental reliance, Debtor has the burden

---

[46] *Id.* at 914 (citing *Ortego v. State, DOTD*, 689 So.2d 1358 (La. 1997)); *see*, *also Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally) (quotation omitted).

[47] *Id.*

[48] *Id.* (citation omitted).

of proving by a preponderance of the evidence the following three (3) elements: (1) a representation by conduct or words; (2) a justifiable reliance on that representation; and, (3) a change in position to one's detriment because of the reliance.[49]

Assuming for the purpose of argument that the first two (2) elements of this doctrine are met, the Court finds that Debtor has failed to satisfy his burden of proof on the third. Debtor did not establish that he changed his position to his detriment because of Gemino's representations. From the time Mulchay and Anderson corresponded on this issue in September, 2015, Founders continued to fight the execution of the Judgment with HealthEdge. Nothing in the record reflects that their defensive position to collection changed. Because application of detrimental reliance requires a change in position to the detriment of the party asserting it, Debtor's claim must fail.

Finally, Debtor invokes the doctrines of judicial estoppel and judicial admission as a means to enforce a settlement upon Gemino. The basis of Debtor's claims are the two (2) judicial filings: (1) the Pennsylvania Complaint; and, (2) the Affidavit.

A judicial admission is a formal statement by a party or its counsel and contained in a pleading.[50] In Gemino's Pennsylvania Complaint, Mulcahy stated:

> 39. On September 20, 2015, Founders offered to pay Gemino and Purchasers [HealthEdge] $5,500,000.00 in full satisfaction of the Judgment.
>
> 40. Gemino has elected to accept Founders [sic] $5.5 million settlement offer (the "Proposed Settlement"). The proposed settlement payment will be divided as follows: (i) approximately $3.5 million to Gemino to payoff the outstanding balance owed under the Credit Agreement; and (ii) approximately $2.0 million to Purchasers'

---

[49] *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004); *Durio v. Metropolitan Life Ins. Co.*, 653 F.Supp.2d 656, 666 (W.D. La. Sept. 9, 2009).

[50] *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).

attorney to payoff amounts Purchasers' [sic] owe their attorneys.[51]

Although the Complaint represents that Gemino had elected to accept Founders' offer of $5.5million in satisfaction of the Judgment, the Court does not read this as incorporating all of the other terms of its acquiesce. The Complaint was filed on September 21, 2015. It followed three emails from Mulcahy which, when combined, offered to accept $5.5 million if paid within forty-five days of the execution of a mutually acceptable settlement agreement or by a date certain.[52] These additional terms were material to Gemino.[53] While on September 20, 2015 Gemino believed they were acceptable to Founders, payment on a date certain and within forty-five days of agreement was not, as evidenced by Founders' return agreement.

As to the State Court Affidavit, Mulchay represented:

> 3. Founders and Gemino have agreed upon the material terms of a settlement of the dispute. The Founders have agreed to pay to Gemino a lump sum amount of $5.5 million in full satisfaction of the Judgment.[54]

The Affidavit was executed on October 19, 2015. While the Affidavit does represent that the 'material terms' of a settlement have been confirmed, it does not represent that those terms have been reduced to writing. Gemino also filed the Affidavit within the forty-five day period for payment. For these reasons, the Court does not find that the representations contained in the Pennsylvania Complaint or Affidavit were misleading or contrary to Gemino's present position.

---

[51] Exh. 2.

[52] *See*, Exhs. 7, 17.

[53] Hearing Transcript p. 187, lines 7-9; p. 188, lines 1-3.

[54] Exh. 4.

17

This leaves the Court with Debtor's request for the application of judicial estoppel. Judicial estoppel is an equitable doctrine which prevents a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior judicial proceeding. To successfully invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the court accepted the prior position.[55]

As an initial matter, Debtor must prove that the position taken by Gemino was not only inconsistent with its existing position, but that a court relied on that position in its ruling. Because the Pennsylvania Complaint was never tested by a substantive hearing and the State Court specifically rejected the argument that Gemino and Founders had settled, this doctrine is inapplicable.

### III. CONCLUSION

For the foregoing reasons, Debtor's Motion for Order Approving Settlement Agreement and Compromise with Gemino (pleading 15) is **DENIED**.

New Orleans, Louisiana, July 7, 2016.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[55] *Teledyne Industries, Inc. v. National Labor Relations Board*, 911 F.2d 1214, 1217-18 (6th Cir. 1990).